IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZAYRA CRUZ, | : Civ. No.  1:24-CV-1966 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I.  Introduction

On August 3, 2020, Zayra Cruz filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplementary security income.[2]  Following an initial hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Cruz was not disabled from her alleged onset date of disability of May 9,

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

[2] Tr. 52.

2005, through January 26, 2022, the date of the ALJ's decision.[3]  The Appeals Council ("AC") reviewed the decision and affirmed, at which point Cruz appealed to this court.[4]  Before the court could rule on that appeal, the Commissioner stipulated to remand the matter back to an ALJ.[5]  Cruz was granted an additional hearing on August 28, 2024, at which time she amended her onset of disability date to August 3, 2020.[6] The ALJ concluded Cruz was not disabled from her amended alleged onset date of disability of August 3, 2020, through September 9, 2024, the date of the ALJ's decision.[7]

Cruz now appeals that decision, arguing the ALJ's decision is not supported by substantial evidence.  After a review of the record, we conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

_____

[3] Tr. 52-64.

[4] Tr. 1, 1904.

[5] *See Cruz v. Kijakazi*, 4:23-CV-251, Doc. 12.

[6] Tr. 1848-67.

[7] Tr. 1818-37.

II.    <u>Statement of Facts and of the Case</u>

On August 3, 2020, Cruz applied for disability insurance benefits and supplemental security income, citing an array of physical and mental impairments, including bipolar disorder, fibromyalgia, lupus, post-traumatic stress disorder ("PTSD"), borderline personality disorder ("BPD"), asthma, anxiety, migraine with aura, back pain, and sleep apnea.[8]  Cruz was 30 years old at the time of the alleged onset of disability, had at least a high school education, and had no relevant past employment.[9]

With respect to these alleged impairments,[10] the records from the alleged period of disability revealed that, in January of 2021, Cruz reported very high levels of anxiety, difficulty with speech, and an impaired memory to her primary care provider, Dr. Elizabeth Horst.[11] Dr. Horst posited that acute stress might have been causing Cruz's

---

[8] Tr. 374.

[9] Tr. 1835.

[10] Because Cruz's appeal focuses on the ALJ's treatment of evidence related to her mental health impairments, we will forego discussion and analysis of Cruz's physical health records and evaluations.

[11] Tr. 1739

3

symptoms.[12]  Cruz returned for a follow up with Dr. Horst in February, still reporting anxiety.[13]  Dr. Horst suggested Cruz "seriously consider counseling."[14]

In July of 2021, Cruz began mental health counseling with Christianne Eyler, MA.[15]  Cruz continued this treatment roughly biweekly through December of 2021.[16]  Ms. Eyler's notes consistently show Cruz had a depressed and anxious mood, blunted affect, and suffered from severe sleep disturbances.[17]  Those notes also indicate Cruz was diagnosed with PTSD, BPD, generalized anxiety disorder ("GAD"), and bipolar affective disorder.[18]  In December of 2021, Ms. Eyler filled out an impairment questionnaire pursuant to Cruz's pursuit of disability benefits, wherein she explained that Cruz's response to treatment was

---

[12] Tr. 1739-40.

[13] Tr. 1732.

[14] Tr. 1733.

[15] Tr. 1384-88.

[16] Tr. 1362-88, 1664-65.

[17] Tr. 1365, 1372-73, 1376, 1378, 1381, 1664.

[18] Tr. 1664.

"poor."[19]  She also repeated the clinical findings discussed above, adding that Cruz suffered from recurrent panic attacks.[20]  Ms. Eyler stated that Cruz had marked limitations in her abilities to: maintain customary workplace attendance and punctuality, complete a normal workday or workweek without interruptions from her mental health impairments, perform at a consistent pace, respond appropriately to changes in a work setting, and deal with normal work related stress.[21]

In December of 2021, Cruz transferred her counseling to Wellspan Behavioral Health.[22]  That treatment continued regularly through March of 2024.[23]  Wellspan treated Cruz for bipolar affective disorder, PTSD, GAD, BPD, and insomnia.[24]  At these sessions, Cruz consistently reported issues with anxiety, panic, and sleeping.[25]

---

[19] Tr. 1589.

[20] Tr. 1590.

[21] Tr. 1594.

[22] Tr. 2740.

[23] Tr. 2506-2545, 2724-43.

[24] *Id.*

[25] Tr. 2526, 2535, 2724.

It is against this factual backdrop that the ALJ conducted a hearing in Cruz's case on August 8, 2024.[26]  Cruz and a vocational expert ("VE") both testified at this hearing.  Cruz testified about the effects of her recent gastric bypass surgery, her apnea, her daily pain, her mental health challenges, and her inability to do certain household chores.[27]  The VE in his testimony first classified Cruz's past work, then answered hypothetical questions about an individual with Cruz's background and specific types of limitations.[28]

Following this hearing, on September 9, 2024, the ALJ issued a decision denying Cruz's application for benefits.[29]  In that decision, the ALJ first concluded that Cruz had not engaged in substantial gainful activity since August 3, 2020.[30]  At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Cruz suffered from the following severe impairments: asthma, degenerative disc disease,

---

[26] Tr. 1850-67.

[27] Tr. 1852-63.

[28] Tr. 1864-66.

[29] Tr. 1815-46.

[30] Tr. 1821.

fibromyalgia, migraines, inflammatory polyarthritis, chronic pain syndrome, sleep apnea, obesity, bipolar disorder, PTSD, GAD, BPD, and panic disorder.[31]  At Step 3 the ALJ determined that Cruz did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[32]

Between Steps 3 and 4 the ALJ concluded that Cruz retained the residual functional capacity to:

> [P]erform less than the full range of light work as defined in 20 CFR 416.967(b). She is limited to occasional postural movements except never use ladders, ropes, or scaffolds. She must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, dangerous machinery, and unprotected heights. Work that is limited to simple and routine tasks, involving only simple, work related decisions, and with few, if any, workplace changes. She is limited to only occasional interaction with supervisors.[33]

In reaching this RFC determination, the ALJ made the following findings: the ALJ considered Cruz's reported, subjective symptoms, and found that her "medically determinable impairments could reasonably be

---

[31] *Id.*

[32] *Id.*

[33] Tr. 1826.

expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record [.]"[34]  The ALJ also found that Cruz's "medical records contain substantial evidence that is not consistent with the claimant's allegations pertaining to the claimant's mental impairments."[35]  The ALJ embarked on a review of the medical record evidence he found supported those findings.[36]

The ALJ next considered the three mental health opinions in the record.  The ALJ was not persuaded by Ms. Eyler's opinion.[37]  Ms. Eyler opined that Cruz was "housebound," her mental limitations were such that she lacked the aptitude for "even unskilled work [,]" and she could only meet a standard work schedule ten percent of the time.[38]  The ALJ found this opinion inconsistent with Ms. Eyler's own mental status

---

[34] Tr. 1827.

[35] Tr. 1829.

[36] Tr. 1827-30.

[37] Tr. 1832.

[38] Tr. 1588-96, 1832.

examination, her December 2021 evaluation of Cruz, and certain documented clinical findings.[39]

The ALJ found the opinion of state agency psychological consultant Dr. Soraya Amanullah generally persuasive, excepting two specific conclusions.[40] The ALJ was not persuaded by Dr. Amanullah's findings that Cruz was moderately limited in "interacting with the public and getting along with coworkers or peers," concluding that portion of Dr. Amanullah's opinion was inconsistent with documented clinical examination findings of Cruz's good insight, good judgment, and normal and cooperative behavior.[41] The ALJ was also not persuaded by Dr. Amanullah's findings that Cruz had no difficulties in "adapting and managing oneself [,]" concluding that this opinion did not adequately consider Cruz's mental health symptoms.[42] The ALJ was apparently

---

[39] Tr. 1832.

[40] Tr. 1832-33.

[41] Tr. 142, 1833.

[42] Tr. 142-43, 1833.

persuaded by all of Dr. Amanullah's other conclusions, including that Cruz could "perform one- and two-step tasks."[43]

Finally, the ALJ considered the mental health opinion of Dr. John Gavazzi.[44]  The ALJ found this opinion persuasive without reservation, noting it was supported by Dr. Gavazzi's references to Cruz's mental health symptoms and was consistent with her longitudinal medical records.[45]  Dr. Gavazzi's opinion stated, *inter alia*, that Cruz "can perform one- or two-step, routine tasks in a stable environment."[46]

The ALJ then found at Step 4 that Cruz had no past relevant work, but, at Step 5, found that she could perform other jobs that existed in significant numbers in the national economy, such as cashier, marker, and sales attendant.[47]  Having reached these conclusions, the ALJ

---

[43] Tr. 141.

[44] Tr. 1833-34.

[45] *Id.*

[46] Tr. 183.

[47] Tr. 1836.

determined that Cruz had not met the demanding showing necessary to sustain this claim for benefits and denied the claim.[48]

This appeal followed.[49]  On appeal, Cruz challenges the adequacy of the ALJ's decision, arguing it is not supported by substantial evidence.[50] As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be remanded for further consideration by the Commissioner in accordance with this decision.

## III.  Discussion

### A.  Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[51]  Substantial evidence "does not mean a large or considerable amount of evidence, but

---

[48] Tr. 1837.

[49] Doc. 1

[50] Doc. 12

[51] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[52]  Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[53]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[54]  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[55]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[56]

---

[52] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[53] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[54] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[55] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[56] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[57]   Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[58]   Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[59]

---

[57] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[58] *Id.*

[59] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[60] Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[61] This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[62] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[63]

---

[60] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[61] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

[62] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

[63] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[64] This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[65] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[66]

---

[64] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

[65] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

[66] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation.[67]    The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[68]

Between Steps 3 and 4, the ALJ determines the claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[69]    In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[70]    Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that

---

[67] 20 C.F.R. §§404.1520(a), 416.920(a).

[68] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

[69] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[70] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

determination will not be set aside if it is supported by substantial evidence.[71]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[72] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[73]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of

---

[71] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[72] *Mason*, 994 F.2d at 1064.

[73] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

determining an RFC."[74]  Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[75]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.   Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[76] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.  On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have

---

[74] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[75] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

[76] *Biller*, 962 F. Supp. 2d at 778–79.

routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[77]  Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[78]

C.  **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[79]  Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[80]  Supportability means "[t]he more relevant the objective medical evidence and supporting

---

[77] *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

[78] *Burns,* 312 F.3d 113.

[79] 20 C.F.R. § 404.1520c(c).

[80] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi,* 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[81]   The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[82]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[83]   When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[84]   Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[85]   On the other hand, in

---

[81] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[82] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[83] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

[84] *Mason*, 994 F.2d at 1066.

[85] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[86]

### D.  This Case Will Be Remanded.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests,"[87] and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."[88]  Cruz argues that the decision is not supported by substantial evidence because the ALJ failed to include, or explain the omission of, certain limitations opined necessary by medical opinion sources which the ALJ found persuasive. The Commissioner counters that the ALJ is not obligated to include every limitation opined necessary by a given medical source.  After consideration, we conclude that the RFC is not supported by substantial evidence.

---

[86] *Cummings*, 129 F. Supp. 3d at 214–15.

[87] *Cotter*, 642 F.2d at 704

[88] *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

1. <u>The Effect of a Limitation to One- and Two-Step Tasks</u>

Cruz brings an issue before us that, while formally unsettled[89] in the Third Circuit, is generally found to require remand: whether an RFC limiting a claimant to "simple, routine tasks" is sufficient to account for a persuasive medical opinion's limitation to "one- and two-step tasks."[90] We conclude it is not.

There are two components to this issue. First is that, where an ALJ has found a medical opinion persuasive, the ALJ creates an obligation for his or herself. For each limitation opined necessary by a persuasive medical source, the ALJ is obligated to either: (1) incorporate that limitation in the claimant's RFC, or (2) explain the basis for discounting

---

[89] *Stine v. Kijakazi*, Civ. No. 21-CV-5492, 2023 WL 3483885, *9 (E.D. Pa. 2023) ("[T]he distinction between an RFC for simple, routine tasks (as found by the ALJ here) and one for one-to-two-step tasks is unsettled in the Third Circuit . . . [though] the majority of courts have found the distinction to be meaningful.").

[90] Various authors have slightly different nomenclature to describe this limitation. Some use "one- or two-step tasks," others "one- and two-step tasks," and others still "one- to two-step tasks." We do not perceive any difference between these phrasings.

that limitation.   Such an obligation ensures that any omission was intentional and supported by substantial evidence in the record.[91]

The second component to this issue requires us to consider whether an RFC limiting a claimant to "simple, repetitive tasks," is sufficient to either (1) account for a one- and two-step tasks limitation from a persuasive medical source, or (2) explain the omission of such a limitation.   In our view, it is not.   Rather, we conclude that "simple, repetitive tasks" are legally distinct from "one- and two-step tasks." While our Court of Appeals has not addressed this issue, as we will discuss below, we are assured of this conclusion because of language in

---

[91] *See e.g., Steinmetz v. Colvin*, Civ. No. 23-CV-2066, 2025 WL 36159, *7 (M.D. Pa. Jan. 6, 2025) (*citing Durden v. Colvin,* 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016); *Cotter*, 642 at 704-05 ("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."); *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) ("[U]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty[.]") (citation modified)).

the Dictionary of Occupational Titles ("DOT"), and by the overwhelming support in other courts for this result.

The DOT defines occupations by reasoning level and defines "reasoning level one" as the ability to "apply commonsense understanding to carry out *simple one-or two-step instructions.*"[92] The similarity of that language to "one- and two-step tasks," leads us to conclude that an individual limited to "one-and two-step tasks" is likewise limited to "reasoning level one" occupations. Importantly, this limitation *is* dischargeable: an ALJ may find otherwise, so long as they rely on and cite to substantial evidence that adequately explains why they are omitting the limitation in the claimant's RFC despite having found the relevant medical opinion to be persuasive.

Additionally, courts in eight of the eleven circuits where a District court has considered this issue have held that "simple repetitive tasks" and "one- and two-step tasks" are legally distinct limitations.[93] And all

---

[92] Dictionary of Occupational Titles, App'x C, 1991 WL 688702 (2016) (emphasis added).

[93] *See e.g., McGriff v. Colvin*, No. 3:16-CV-911, 2017 WL 3142336, *2-4 (D. Conn. 2017 July 25, 2017); *Maher v. Saul*, No. 19-CV-5721-JDW, 2020 WL 5876808, *8 (M.D. Pa. Sep. 9, 2023); *Williams v. O'Malley*, 0:23-670-

but one of these cases also found that a limitation to "one- and two-step tasks" necessarily limits the claimant to reasoning level one occupations.[94]  The commensurate limitation in reasoning level is an important feature of our conclusion, as otherwise, we draw a distinction between terms but not their legal effect.

Few circuit courts have considered this issue, and those who have did so only in dicta.[95]  That dicta, while differing slightly in terminology

---

JD-PJG, 2024 WL 666089, *3 (D.S.C. Jan. 18, 2024); *Schlattman v. Colvin*, No. 12 C 10422, 2014 WL 185009, *7 (N.D. Ill. Jan. 14, 2014); *Mark S.E. v. Kijakazi*, No. 20-CV-1954, 2022 WL 834513, at *3 (D. Minn. Mar. 21, 2022); *Banales v. Berryhill*, No. EDCV 16-1247 AGR, 2017 WL 651941, *2 (C.D. Cal. Feb. 16, 2017); *M.H. v. Saul*, Case No. 19-1214-JWB, 2020 WL 916856, *5 (D. Kan. Feb. 26, 2020); *Koorathota v. Comm'r of Soc. Sec.*, Case No: 6:19-cv-2150-Orl-LRH, 2021 WL 288987, *4, n. 4 (M.D. Fla. Jan. 28, 2021).

[94] Each of the cases cited in n. 93 explicitly makes this connection—except for *Koorathota*, 2021 WL 288987 (M.D. Fla. Jan. 28, 2021), which did not consider the topic of reasoning levels.

[95] The Fourth Circuit Court of Appeals found a conflict a one-to-two step instructions and reasoning level two jobs *Henderson v. Colvin*, 643 F. App'x 273, 277 (4th Cir. 2016). The Ninth Circuit Court of Appeals has held similarly. *Rounds v. Comm'r of Soc. Sec.* 807 F.3d 996, 1004 (9th Cir. 2015). The Tenth Circuit Court of Appeals has held that a limitation to "simple and routine tasks" constitutes a limitation to reasoning level two jobs which is not inconsistent with our conclusion here. *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008).

and in that terminology's relationship to the reasoning levels, uniformly supports the conclusion that these terms are legally distinct.[96] The First, Fifth, and Sixth Circuits stand apart in that district courts there have held that the terms "one- and two-step tasks" and "simple, repetitive tasks" are *not* distinct, and each varies in their precise use of the terms and their relationships to the reasoning levels.[97]

We therefore conclude that, when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the

---

[96] *See id.*

[97] *See e.g., Bard v. Social Sec. Admin. Comm'r*, 736 F. Supp. 2d 270, 276 (D. Me. 2010) (showing how courts in the First Circuit consider these terms in combination as "simple (one- or two-step) routine, repetitive tasks"); *Pacy v. Colvin*, No. 15-11894-LTS, 2016 WL 1948834 (D. Mass. May 3, 2016) (explaining that a limitation to "simple one- and two-step tasks" does not disqualify a claimant from reasoning level two occupations); *Andre C. v. Comm'r of Soc. Sec.*, Case No. 3:19-CV-155-S-BK, 2020 WL 1220446, *4 (N.D. Tex., Feb. 20, 2020) (collecting cases showing the terms are treated as interchangeable in the Fifth Circuit and neither limitation conflicts with reasoning levels two or three); *Huizar v. Comm'r of Soc. Sec.*, 610 F. Supp.3d 1010, 1016-17 (E.D. Mich. 2022) (holding that the terms are not inconsistent, and that claimants capable of one- and two-step tasks are capable of reasoning level two, but not reasoning level three, occupations).

claimant to reasoning level one occupations, or, (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation. We further conclude that a limitation to "simple, repetitive tasks" is insufficient to account for a limitation to one- and two-step tasks.

### 2. The RFC in this Case is Not Supported by Substantial Evidence.

In the instant matter, the ALJ found Dr. Gavazzi's opinion persuasive.[98]   The ALJ also found Dr. Amanullah's opinion partially persuasive.[99]  Both of these medical opinion sources found that Cruz was limited to one-and two-step tasks.[100]  The ALJ neither incorporated that limitation nor explained its omission, and found Cruz capable of occupations which are exclusively performed at reasoning level two or higher.[101]   As we have explained, this is error, and the lack of any reasoning level one occupations identified at Step 5 affirms that this error is not harmless. Indeed, had the ALJ included the one-and two-step tasks

---

[98] Tr. 1834.

[99] Tr. 1832-33 (also showing that the ALJ did not disclaim Dr. Amanullah's opined limitation to one-and two-step tasks).

[100] Tr. 143, 181.

[101] Tr. 1836.

limitation, and with it the limitation to reasoning level one occupations, Cruz would have been found incapable of the occupations identified at Step 5.

We therefore conclude the decision is not supported by substantial evidence, and remand is required for further consideration of these issues.[102]  While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter.  Rather, that task is left to the ALJ on remand.

## IV.   Conclusion

For the foregoing reasons, the decision of the Commissioner will be REMANDED for further consideration.

An appropriate order follows.

Submitted this 24th day of September 2025.


*s/ Daryl F. Bloom*
Daryl F. Bloom

---

[102] Because we find that this issue necessitates remand, we decline to analyze Cruz's other claims of error.

Chief United States Magistrate Judge